UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARCO CELAYA,

Petitioner,

v.

SUPERIOR COURT OF CALIFORNIA,

Respondent.

Case No.: 17CV552 JAH (BGS)

**REPORT AND RECOMMENDATION FOR ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Marco Celaya (hereinafter "Petitioner" or "Celaya") has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). (ECF No. 1.) Pending before the Court is Respondent's Motion to Dismiss the Petition ("Motion"). (ECF No. 6.) Petitioner has filed an Opposition to the Motion to Dismiss ("Opposition"). (ECF No. 10.)

This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(d) for a report and recommendation. The Court submits this Report and Recommendation to United States District Judge John A. Houston pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

Petition asserts claims for ineffective assistance of counsel alleging Petitioner's trial counsel failed to properly advise him of the immigration consequences of his guilty plea and a possible defense that he might have asserted. Respondent moves to dismiss based on the one-year statute of limitations for seeking federal habeas relief and numerous procedural bars. Petitioner opposes primarily by arguing he could not assert his ineffective assistance of counsel claim until he received a February 17, 2016 Order denying his application for cancellation of removal based on his criminal conviction. As explained more fully below, the Court disagrees. Petitioner knew the facts supporting his ineffective assistance of counsel claim no later than October 2013 when his immigration counsel told him the immigration consequences of his guilty plea.

The Court has considered Respondent's Motion to Dismiss, Petitioner's Opposition, the Petition, and all exhibits and lodgments submitted by Petitioner and Respondent. For the reasons set forth below, this Court recommends that Respondent's Motion to Dismiss be **GRANTED** and the Petition be **DISMISSED**.

## I.    FACTUAL BACKGROUND

The witness[1] that reported Petitioner as a suspected drunk driver reported the following to police. The witness exited the Poway Wal-Mart parking lot at approximately 10:45PM on June 29, 2013. (Pet., Ex. B,[2] Arrest Report ("Arrest Report") [ECF 1-3 at 12-20] at 8.)[3] As the witness entered the left turn lane on Community Road,

---

[1] Although not included here because it is unnecessary, the witness was identified by name in the police report.

[2] This document is also included in Lodgment 5, Celaya Habeas Pet. to Cal. Crt. of Appeals, Ex. B [ECF 7-5 at 48-56].

[3] The Lodgments filed in the Court's CM/ECF filing system are not labeled with lodgment numbers on the face of the documents, although the lodgment numbers correspond to the electronic filing numbers. For example, Lodgment 1 is CM/ECF 7-1. The lodgments lodged with the Court do include lodgment numbers on the face of the documents, but lack the CM/ECF pagination. For ease of reference, the Court has attempted to initially reference documents by lodgment number and CM/ECF pagination

he noticed Petitioner in front of him not moving when the left turn arrow turned green. (*Id.*) The witness exited the lane, and lined up parallel to Petitioner and observed that he was asleep behind the wheel. (*Id.*) Upon noticing Petitioner asleep, the witness honked his horn, waited another cycle, and Petitioner drove straight out of the left turn lane and proceeded northbound on Community Road. (*Id.*) The witness followed Petitioner and observed that he was "all over the road," suspected that Petitioner was under the influence, and called 911. (*Id.*) The witness stated that Petitioner nearly hit three parked cars as he continued to the intersection of Aubrey Street before making a U-turn and continued southbound on Community Road. (*Id.*) Petitioner halted his vehicle in the number two lane near the 13300 block of Community Road, and remained there for approximately twenty seconds. (*Id.*) Petitioner then pulled his vehicle over to the curb, and remained there until San Diego Sheriff Deputies arrived on scene. (*Id.*)

Petitioner was found "drooling and unresponsive," still behind the wheel, with "the vehicle . . . in drive and…. his foot on the brake." (*Id.* at 5 [EC 7-5 at 53].) Petitioner had stopped his vehicle within close proximity to his apartment building. (*Id.*) A "small child was sleeping in the right rear passenger seat in a child restraint harness. (*Id.*) In a subsequent conversation with police, Petitioner admitted to drinking nine, 12 ounce cans of Victoria beer starting at 4:00PM, and consuming his last beer at 11:00PM. (*Id.*) He also indicated that he felt drunk and that he should not have been driving. (*Id.*)

Petitioner was given numerous field sobriety tests with poor results. (*Id.* at 6-7 [ECF 7-5 at 54-55].) Preliminary Alcohol Screening ("PAS") tests administered at the scene and breath tests administered at the station later yielded percent blood alcohol contents ranging from .196 at 11:43 PM to .149 at 12:09 AM. (*Id.* at 7.) Petitioner was placed under arrest for "operating a motor vehicle while under the influence of alcohol,

_____

and thereafter by the name of the document to the extent possible. The same is true of other documents referenced by the Court including the Petition and exhibits attached to it.

and child neglect because he was driving under the influence of alcohol with his four year old son in the vehicle." (*Id.*)

## II.     PROCEDURAL BACKGROUND[4]

### A.     Plea Proceedings

On July 15, 2013 Petitioner pled guilty to count one, child endangerment (California Penal Code § 273a(a)), as a misdemeanor, and count two, driving under influence (Vehicle Code § 23152(a)). (Lodgment 1, Plea of Guilty/No Contest Misdemeanor Form ("Plea Form")[5] [ECF 7-1, 1-5] at 1.)  A third charge was dismissed. (*Id.*; Lodgment 2, Transcript of July 15, 2013 hearing ("Transcript") [7-2] at 1, 5.) Before the trial court accepted Petitioner's plea, there were several sets of advisements and disclosures regarding the immigration consequences of pleading guilty, including, "I acknowledge that if I am not a U.S. citizen, this plea of Guilty/No Contest may result in my removal, deportation, exclusion from admission to the U.S. and denial of naturalization." (Plea Form at 2.)  Furthermore, trial counsel signed the same form attesting that the "immigration consequences" had been discussed with Celaya before signing. (*Id.* at 3.)  The trial court affirmed the same, explaining "do you understand there are immigration consequences" and "If you are not a U.S. citizen you could be subject to removal, deportation or exclusion from admission to the United States?"  (Transcript at 2.)  In conjunction with other questions, he affirmed.  (*Id.*)  Petitioner was sentenced to five years of misdemeanor probation with alcohol conditions and a parenting class. (*Id.* at 7.)

### B.     Petitioner Transferred to Federal Custody

On July 17, 2013, Petitioner was transferred from state custody to the custody of Immigration Customs Enforcement ("ICE").  (Pet., Ex. D, Celaya I-213 Form ("I-213")

---

[4] The procedural history is presented chronologically.  As a result, the state proceedings and immigration proceedings are not set forth together.

[5] The Plea Form is four pages.  Pages 3 and 4 are out of order.

[ECF 1-3 26-29] at 1-3.) Petitioner's I-213 Form, completed before he was released from ICE custody, summarized his admitted presence in the United States without authorization and his recent criminal history. (*Id.* at 2-3.) It also indicated Petitioner would be served with a Notice to Appear charged as an alien present without admission. (*Id.* at 3.) Following his release, Petitioner received a "Notice of Hearing in Removal Proceedings" dated August 8, 2013, apprising him of a hearing date scheduled for December 10, 2013. (Pet., Ex. E, Celaya Notice of Hearing in Removal Proceedings ("Notice of Hearing") [ECF 1-30-32].)

### C. Petitioner Retains Immigration Counsel

Petitioner retained Murray Hilts, an immigration attorney, in October of 2013. (Pet., Ex. A, Decl. of Marco Celaya ("Celaya Decl.")[6] ¶ 9.) During their initial conversations, Mr. Hilts conveyed to Petitioner that the "convictions would undoubtedly allow DHS [Department of Homeland Security] to meet the charge of removability against [Petitioner] if DHS provided sufficient proof of conviction." (*Id.* ¶ 11.) Furthermore, Mr. Hilts expressed to Petitioner that "there was likely no relief from removal based on [his] convictions." (*Id.*)

### D. December 10, 2013 Immigration Hearing

Petitioner appeared before an immigration judge on December 10, 2013. (Pet. ¶ 11.) Petitioner's declaration attached to his Petition asserts that at this initial hearing DHS did not mention Petitioner's conviction and the matter was set over to June 4, 2014. (*Id.* ¶¶ 11-12.) However, Petitioner's Declaration submitted in support of his habeas petition to the San Diego Superior Court the day before his June 4, 2014 immigration hearing, indicates that he learned at the December 10, 2013 hearing "that DHS had provided sufficient proof of my convictions [and] [i]t was Mr. Hilts opinion that the law

---

[6] The Court refers below to a different declaration from Petitioner in the lodgments, Petitioner's Declaration submitted in support of his initial state habeas petition to the Superior Court, as Celaya State Declaration.

was certain that my convictions would undoubtedly allow the DHS to meet the charge of removability against me now since DHS had provided sufficient proof of conviction." (Lodgment 3, Habeas Pet. to San Diego Sup. Crt. ("Sup. Crt. Pet."), Ex. A ("Celaya State Decl.") ¶ 10.) Petitioner's declaration in support of his federal Petition suggests the first declaration was wrong, indicating that did not know until he reviewed a transcript after the February 17, 2016 decision that "DHS did not raise the issue of my conviction until the second court date before the Immigration Court on June 4, 2014." (*See* Celaya Decl. ¶ 15.)

### E.      First State Habeas Petition Filed June 3, 2017

On June 3, 2014, Petitioner filed his first petition for writ of habeas corpus with the San Diego Superior Court asserting ineffective assistance of counsel. (Lodgment 3, Sup. Crt. Pet. [ECF 7-3].) The Superior Court denied Petitioner's writ of habeas corpus on July 28, 2014. (Lodgment 4 [ECF 7-4].) One of the reasons given for denial, the one Petitioner emphasizes, was his failure to establish "he faced deportation proceedings because of his conviction in this case, rather than on the basis of his status as an illegal alien." (*Id.* at 3.) The court focused on Petitioner's admission in his Form I-213 that he admitted he was not authorized to be in the United States and that he would be charged as an alien present without admission. (*Id.* at 3-4.) The Superior Court relied on Petitioner's I-213 that indicated he was being charged as an alien present without admission and noted the immigration statute referenced pertained to illegal presence, not criminal inadmissibility. (*Id.* at 4.)The court found that "*based on the evidence submitted by Petitioner*, he is facing deportation not on the basis of any criminal conviction, but because of his status as an alien present without admission." (*Id.*) (emphasis added).)

The court also provided other reasons for denial, including his failure to provide "evidence in support of his claim his counsel's performance fell below an objective standard of reasonableness." (*Id.* at 2.) Additionally, the court found Petitioner failed to submit "any evidence he would have been successful had he proceeded to trial…." (*Id.* at 3.)

17CV552 JAH (BGS)

### F. June 4, 2014 Immigration Hearing

At the June 4, 2014 hearing, Petitioner admitted the allegations and conceded removability.  (Pet., Ex. H, June 4, 2014 Hearing Record [ECF 1-3 at 40-41]; Pet., Ex. J, Feb. 17, 2016 Denying Cancelation of Removal ("Feb. 17, 2016 Order") [ECF 1-3 at 49-56] at 2.)  Petitioner was found removable and DHS alleged Petitioner was ineligible for cancellation of removal based on § 273a(a) conviction.  (Pet. ¶ 12; *Id.*)

### G. February 17, 2016 Order

The February 17, 2016 Order indicates that Petitioner applied for cancellation of removal.  (Feb. 17, 2016 Order at 2.)  The Order finds Petitioner statutorily ineligible for cancellation of removal because his conviction under California Penal Code § 273a(a) qualifies categorically as a "crime of child abuse" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act.  (*Id.* at 3-5.)

### H. California Court of Appeal Decision

On August 26, 2016, six months after the February 17, 2016 denial of cancellation of removal, Petitioner filed a habeas petition with the California Court of Appeal.  (Lodgment 5 [ECF 7-5].)  Petitioner argued his counsel was ineffective because she failed to advise him of the immigration consequences of his plea and failed to advise him that volitional movement was a required element of his driving under the influence offense and there was a lack of evidence in support of it.  Petitioner argued he was diligent in pursing his claims because he filed the petition with the Court of Appeal "within a reasonable time after the IJ's [Immigration Judge] decision, specifically negating the Superior Court's basis for denial in the first place."  (*Id.* at 37.)  Petitioner argued the February 17, 2016 Order was a change in fact that justified consideration of his claims.  (*Id.* at 38.)

The Court of Appeal denied the petition on September 7, 2016.  (Lodgment 6, Court of Appeals Decision [ECF 7-6].)  The court found Petitioner was not diligent because he "knew he could be deported at the latest on July 17, 2013, when the Department of Homeland Security detained him." (*Id.* at 2.)  The court explained that

"waiting more than three years from that date (or more than two years from the date the superior court denied habeas corpus relief, or six months from the date the immigration court denied his application to cancel removal) before seeking relief from this court shows a lack of due diligence." (*Id.*) The court also noted that under California Penal Code § 1018 Petitioner could have moved to withdraw his plea within 6 months of it, when he was detained and knew he was facing deportation, but chose not to. (*Id.*) The court also found his claims barred because he could have challenged his plea by obtaining a certificate of probable cause and filing a notice of appeal. (*Id.*)

In addition to these procedural bars to consideration of the petition, the court also found Petitioner's claim failed on the merits. (*Id.* at 2-4.) The court found Petitioner had failed to provide any evidence other than his own declaration that substantiated his claims regarding the lack of discussion regarding the potential immigration repercussions of his guilty plea and identified where Petitioner and his counsel both signed the Plea Form indicating Petitioner was aware of the adverse immigration consequences of a guilty plea. (*Id.* at 2-3.) The Court of Appeal rejected Petitioner's claim his counsel was deficient in advising him regarding the driving under the influence charge. (Court of Appeal decision at 3.) The court emphasized that Petitioner was found drooling and unresponsive with the car in gear and his foot on the brake, blood alcohol tests ranging from .140 to .196, and his admissions that he consumed nine beers over the course of seven hours, felt drunk, and should not have been driving. (*Id.*) The court then found counsel was not deficient by failing to advise Petitioner he could defend the charges by arguing law enforcement did not see him actually driving. (*Id.*)

## I.    California Supreme Court Denies Review

On September 30, 2016, Petitioner filed a petition before the California Supreme Court. (Lodgment 8, Pet. for Review After the Unpublished Decision of the Court of Appeal, [ECF 7-8].) It appears the filing was rejected as untimely on October 3, 2016.

1    (Lodgment 7 [ECF 7-7].[7])  Petitioner then filed another writ of habeas corpus with the
2    California Supreme Court on November 14, 2016. (Lodgment 9, Pet. for Writ of Habeas
3    Corpus to Vacate Plea of Guilty [ECF 7-9.)  The Supreme Court summarily denied relief
4    on February 15, 2017.  (Lodgment 10 [ECF 7-10].)

### J.    Federal Petition

6    On March 20, 2017, Petitioner filed his federal Petition pursuant to 28 U.S.C.
7    § 2254. (Pet. [ECF 1]).  As noted above, Petitioner alleges his counsel was ineffective
8    for failing to properly advise him of the immigration consequences of his guilty plea and
9    that his counsel failed to explain he could defend the charges based on law enforcement
10   not witnessing the volitional movement of the vehicle. (*Id.*)

11   Respondent moves to dismiss the Petition as untimely and procedurally barred.

## III.   DISCUSSION

### A.    Statute of Limitations

The Court outlines the law regarding the timeliness of the Petition and then considers the parties' arguments regarding its application.

#### 1.    Applicable Law

##### a)    One Year Statute of Limitations

The federal Antiterrorism and Effective Death Penalty Act of 1996 ("ADEPA") establishes a one-year statute of limitations for filing a federal habeas corpus petition. 28 U.S.C. §2244(d)(1).  Generally, under § 2244(d)(1)(A), a Petitioner has one year from the date his conviction becomes final to file a petition for writ of habeas corpus in federal court.  However, a later date may apply under certain circumstances. § 2244(d)(1)(B-(D).  The statute of limitations may also be subject to both statutory and equitable tolling. § 2244(d)(2); *Holland v. Florida*, 560 U.S. 631, 645 (2010) (finding AEDPA's statute of limitations subject to equitable tolling).

---

[7] Respondent's Notice of Lodgments, (ECF 7), lists this as Lodgment 8, however it is filed as Lodgment 7 and labeled the same.

### b) Statutory Tolling

Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, state habeas petitions filed *after* the statute of limitations period ends do not revive a limitations period that has already ended before the state petition was filed. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003)("section 2244(d) does not permit re-initiation of the limitations period that has ended before the state petition was filed.")

### c) Equitable Tolling

AEDPA's statute of limitations is also subject to equitable tolling. *Holland*, 560 U.S. at 645. "To be entitled to equitable tolling, [Petitioner] must show, '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented him from filing." *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).) Equitable tolling is unavailable in most cases, and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).

### d) Later Start Date for the Statute of Limitations

Generally, a Petitioner has one year from the date his conviction becomes final to file a petition for writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1)(A). However, the limitations period may commence on a later date. Section 2244(d)(1) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

### 2.   Analysis

#### a)   Calculation Absent Tolling or Later Start Date

Absent statutory or equitable tolling, or a later start date for the statute of limitations under § 2244(d)(1)(B)-(D), Petitioner had until September 13, 2014 to file a federal habeas petition. Petitioner had one year from the date his conviction became final to file his petition for writ of habeas corpus with the Court. 28 U.S.C. § 2244(d)(1)(A). Petitioner did not appeal following his guilty plea. "Hence, the judgment became final on [September 13, 2013], the date California' sixty-day appeal period lapsed." *Stancle v. Clay*, 692 F.3d 948, 951 (9th Cir. 2012) (citing Cal. R. Ct. 8.308(a)); *see also Roberts v. Marshall*, 627 F.3d 768, 771 (9th Cir. 2010) (finding conviction final on date time for seeking review expired under citing Cal. R. Ct. 8.308(a) — calculated as 60 days after conviction). One year later, AEDPA's one-year statute of limitations expired. Accordingly, absent tolling or a later start date to the statute of limitations, the Petition, filed on March 20, 2017, is barred by AEDPA's statute of limitations.

#### b)   Statutory Tolling

Respondent concedes, and the Court agrees, that Petitioner was entitled to statutory tolling for the fifty-six days he had a state habeas petition pending, (*see* II.E), before the Superior Court. As to the state petition filed with the Court of Appeal on August 26, 2016, (*see* II.H), and the later petitions filed with the California Supreme Court, (*see* II.I), these petitions did not toll the statute of limitations because they were filed well after the statute of limitations ended. *Ferguson*, 321 F.3d at 823 (later filed state petitions do not

re-initiate expired limitations period).  Even if Petitioner were entitled to a later start date under § 2244(d)(1)(D) and that date were far enough out that these state petitions could toll the statute of limitations under § 2244(d)(2), a proposition rejected by the Court below, they would not.  "When a postconviction petition is untimely under state law, [as the state courts found here], 'that [is] the end of the matter' for purposes of § 2244(d)(2).  *Pace v. DiGuglielmo*, 544 U.S. at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).

### c)    Equitable Tolling

Petitioner does not assert any basis for equitable tolling in his Petition or in his Opposition to the Motion to Dismiss.  The Court finds he is not entitled to it on that basis.  Additionally, to the extent he is seeking equitable tolling without explicitly stating so based on reasons put forth as to other issues, he is not entitled to it.  As the analysis below reflects, Petitioner was not diligent in pursuing his claims, delaying almost a year before seeking relief in state court and three years before seeking relief in this court.  Also, as set forth above in the procedural history and as explained below, there has also been no showing of any extraordinary circumstance that prevented Petitioner from pursuing his rights.  Despite knowing the facts supporting his claims, he delayed taking action for years.

### d)    Later Start Date to Statute of Limitations

The crux of Petitioner's argument that his federal Petition (filed more than three and a half years after he pled guilty) is timely is that he is entitled to a later start date for the statute of limitations.  (Opp'n at 2-4.)  As noted above, (III.A.1.d), the statute of limitations commences on the latest of four possible dates.  § 2244(d)(1)(A)-(D).[8]  Petitioner does not specifically cite any of these sections, but appears to argue he is

---

[8] The Court has already discussed the first, the date the judgment became final.  (*See* III.A.2.a).)

entitled to a later start date under § 2244(d)(1)(D).[9] Under § 2244(d)(1)(D) the statute of limitations commences on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

"[T]o have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." *Hasan*, 254 F.3d at 1154.

Petitioner does not dispute he knew the facts supporting unreasonable performance, *i.e.* trial counsel's allegedly bad advice, by October 2013, when his immigration counsel told him the immigration consequences of his plea that his trial counsel allegedly did not convey. Petitioner's argument focuses on the prejudice prong. Petitioner argues "the issue in determining whether or not Mr. Celaya's petition is timely is not whether or not he knew he could be deported. Rather, it is when he knew or could have learned that child endangerment is a mandatory-removal offense and when he could file a claim in good faith." (Opp'n at 5.) He argues he did not have a good faith basis for arguing the prejudice prong until he was denied cancellation of removal on February 17, 2016. However, Petitioner seems to misunderstand how prejudice is shown in this context.

"To satisfy the prejudice prong, a petitioner must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *U.S. v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). When a defendant claims counsel's deficient performance led him to accept a guilty plea, "the defendant can show prejudice by demonstrating a 'reasonable probability that, but for

---

[9] Petitioner does not cite § 2244(d)(1)(D), but does cite to *Hasan v. Galaza*, 254 F.3d 1150 (9th Cir. 2001). Petitioner does not reference any particular pages within the opinion, but the case addresses application of § 2244(d)(1)(D). *Id.* at 1154.

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. U.S.*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Rodriguez-Vega*, 797 F.3d at 788 ("Where ineffective assistance leads a petitioner to accept a plea bargain, a different result means that but for counsel's errors, [the petitioner] would either have gone to trial or received a better plea bargain.") (citations omitted).

Petitioner did not need to be removed or have the order denying cancellation of removal in hand to start the clock, he only needed to know the facts suggesting that "but for [his trial ] counsel's errors he would not have pleaded guilty and have insisted on going to trial" or demanded a better deal.

There are numerous times before the February 17, 2016 Order was issued that Petitioner knew "facts suggesting both unreasonable performance and resulting prejudice." *Id.* at 1154. As an initial matter, the advisals Petitioner received and acknowledged on his Plea Form and the warning from the trial court judge that there were immigration consequences to pleading guilty, (II.A), were facts that at least suggested the guidance he alleges he received —"that [his] immigration was a completely different case and had nothing to do with my criminal case," (Celaya Decl. at ¶ 6) — was wrong and he would be facing immigration consequence by pleading guilty. However, even if these were not sufficient facts to start the clock, additional facts — immigration counsel's October 2013 advice and Petitioner being found removable and charged as ineligible for cancelation of removal — certainly were.[10]

///

///

---

[10] Petitioner also likely knew the facts supporting his claim on December 10, 2013. However, because Petitioner now claims DHS did not raise his conviction until the June 4, 2014 hearing, as opposed to the December 10, 2013 hearing, (II.D) and the claim is untimely regardless, the Court does not address this as another time when the clock started.

#### (1)     October 2013

No later than October 2013 Petitioner's immigration counsel told him that "the law was certain that [his] convictions would undoubtedly allow DHS to meet the charge of removability against [him] if DHS provided sufficient proof of conviction [and] there was likely no relief from removal based on [his] convictions." (Celaya Decl. ¶ 11.) "Just as the petitioner's particular circumstances may include impediments to discovering the factual predicate of a claim, they may also include any unique resources at the petitioner's disposal to discover his or her claim." *Ford v. Gonzalez*, 683 F.3d 1230, 1236 (9th Cir. 2012). (*Id.* at 5.) Petitioner had a resource, an immigration attorney, telling him the specific immigration consequences of his guilty plea. At this point Petitioner was aware of the important facts suggesting prejudice. His own declaration states that at his October 2013 meeting with immigration counsel, he told counsel "I would have never agreed to plead guilty if I had known it would subject me to removal or lose my ability to obtain my LPR [legal permanent resident]." (Celaya Decl. ¶10.)

Petitioner knew in October 2013 that his counsel was deficient and if not for that deficiency he would not have pleaded guilty. The Court finds that, to the extent Petitioner was entitled to any later start date of the statute of limitations, it was no later than October 2013.  Accordingly, the statute of limitations ran in approximately December 2014, more than two years before he filed his federal Petition.[11]

#### (2)     June 4, 2014 Hearing

Even if Petitioner's immigration counsel's clear October 2013 guidance was somehow not definitive enough because DHS had not explicitly said it to him, on June 4, 2014, DHS said it too. Similarly, to the extent Petitioner is suggesting his counsel's caveat that DHS had to provide sufficient proof of conviction meant he did not know the

---

[11] As discussed *infra*, Petitioner was entitled to 56 days of statutory tolling while his petition to the Superior Court was pending, but he was not entitled to statutory tolling for the state petitions filed in 2016. (*See* III.A.1.b).)

important facts to start the clock, that piece of information was provided no later than June 4, 2014.  (Celaya Decl. ¶¶ 15-16 (acknowledging DHS raised the conviction at the June 4, 2014 hearing[12]); June 4, 2014 Hearing Record [ECF 1-3 at 41].)

Petitioner relies on *Hasan* to argue there were no facts suggesting prejudice from counsel's deficient performance until the eventual order of removal. However, in *Hasan*, the court found that the petitioner had a good faith basis for arguing prejudice when he learned facts that, if found by his trial counsel previously through proper investigation, may have resulted in a new trial.  Here, Petitioner knew by October 2013 that the guidance he alleged he received from trial counsel when he pled was not accurate and that he would not have plead but for that deficiency.  And, by June 4, 2014 he knew he was removable based on his conviction and charged with being ineligible for cancellation of removal.  That he went on to pursue cancelation of removal does not mean he did not already know that he would have not agreed to the plea if he had been properly advised of the immigration consequences.

Additionally, Petitioner seems to argue that because the Superior Court based its denial, in part, on DHS deporting him for being in the U.S. illegally and not based on his conviction, he could not pursue his ineffective assistance of counsel claim beyond the Superior Court without a final order of removal.  Petitioner claims the Superior Court required him to obtain a final order of removal to pursue his claim, but that is not in the Superior Court's decision.  Rather, the court found that "*based on the evidence submitted by Petitioner*, he is facing deportation not on the basis of any criminal conviction, but because of his status as an alien present without admission." (*Id.* (emphasis added).)  The Superior Court relied on Petitioner's I-213 that indicated he was being charged as an

---

[12] As explained above, Petitioner's declaration filed in support of his petition to the Superior Court indicated that DHS provided sufficient proof of his conviction at the December 10, 2013 hearing, but his declaration submitted in support of his federal Petition indicates Petitioner later discovered this information was provided at this June 4, 2014 hearing. (Celaya State Decl. ¶ 10; Celaya Decl. ¶ 15.)

alien present without admission and noted the immigration statute referenced in it pertained to illegal presence, not criminal inadmissibility. (Superior Crt. Decision at 4.) The court's reliance on this evidence is significant for two reasons. First, it is clear the court is not requiring Petitioner to provide a final order of removal to assert a claim, but rather some evidence he is facing removal on the basis of the crime he pled to, allegedly on the lack of advice from trial counsel. Second, this basis for denial did not even exist by the time the Superior Court decision was issued. The day after Petitioner submitted his Superior Court petition, at the June 4, 2014 hearing, he was found removable and charged as ineligible for cancellation of removal based on his criminal conviction. (*See* II.F.) Assuming Petitioner was prevented from furthering his claim on the basis of this opinion, its factual basis, at least the portion of the decision Petitioner relies on, no longer existed.[13]

The Court finds that, even if Petitioner was entitled to a later start date of the statute of limitations and the Court assumes it was not October 2013, as the Court found above, it commenced on June 4, 2014. With that start date and the benefit of statutory tolling while his petition was pending before the Superior Court, the statute of limitations expired on July 28, 2015, more than a year and a half before he filed his federal Petition.

## B. Procedural Bars

Respondent argues that the Petition is also procedurally barred by three separate independent and adequate state procedural rules: (1) untimely; (2) failing to properly raise it in the trial court; and (3) failing to obtain a certificate of probable cause. (Mot. at 8.) Each of these basis for denial is set out in the Court of Appeal's September 7, 2016 denial of habeas relief.[14]

---

[13] As explained above, the court provided other reasons for denial. (*See* II.E)

[14] The Court looks through the California Supreme Court's summary denial to the Court of Appeal's decision, the last reasoned decision from the state courts on Petitioner's claim. The California Supreme Court issued a summary denial stating, "[t]he petitioner for writ of habeas corpus is denied," without citation to any cases. (Lodgment 10 [ECF

17CV552 JAH (BGS)

### 1. Applicable Law

"The procedural default doctrine 'bar[s] federal habeas [review] when a state court decline[s] to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement.'" *Calderon v. U.S. Dist. Court*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1, 9 (2012)). In order for a claim to be procedurally defaulted for federal habeas corpus purposes, the opinion of the last state court rendering a judgment in the case must clearly and expressly indicate that its judgment rests on a state procedural bar. *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman*, 501 U.S. at 729-30; *Thomas v. Goldsmith*, 979 F. 2d 746, 749 (9th Cir. 1992). The Court of Appeal decision explicitly identifies the three procedural bars identified above and discussed below and relies on them to deny relief.[15]

"For the procedural default rule to apply . . . the application of the state procedural rule must provide an adequate and independent state law basis on which the court can deny relief." *Bennett*, 322 F.3d at 580; *see also Calderon*, 96 F.3d at 1129 ("Under the adequate and independent state grounds doctrine, [courts] will not review a question of federal law decided by a state court if the decision of that court rests on a state law

---

7-10].) "When at least one state court has rendered a reasoned decision, but the last state court to reject a prisoner's claim issue an order 'whose text or accompanying opinion does not disclose the reason for the judgment,' we 'look through' the mute decision and presume the higher court agreed with and adopted the reasons given by the lower court." *Curiel v. Miller*, 830 F.3d 864, 870 (9th Cir. 2016) (en banc) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 802-06 (1991)).

[15] The Court of Appeal also went on to find that even if the petition was not procedurally barred, it would fail on the merits. (Lodgment 5 at 2-4.) "A state court's application of a procedural rule is not undermined where . . . the state court simultaneously rejects the merits of the claim." *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003); *see also Beard v. Kindler*, 558 U.S. 53, 130 S. Ct. 612 (2009)(a state procedural rule may count as an adequate and independent ground even if the state court had discretion to reach the merits despite the default).

17CV552 JAH (BGS)

ground that is independent of the federal question and adequate to support the judgment."); *see also La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001); *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000).

A state procedural rule constitutes an 'independent' bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling." *Cooper v. Brown*, 510 F.3d 870, 924 (9th Cir. 2007). "A state procedural rule constitutes an 'adequate' bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.'" *Cooper*, 510 F.3d at 924 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *see also Calderon*, 96 F.3d at 1129 (explaining "a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default"). The Ninth Circuit follows a burden-shifting approach to determine whether state bar is adequate. *See Bennett*, 322 F.3d at 585-86. Because it is an affirmative defense, Respondent must first "adequately ple[a]d the existence of an independent and adequate state procedural ground." *Bennett*, 322 F.3d at 586. "[T]he burden [then] shifts to the petitioner to come forward with 'specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule.'" *Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004) (quoting *Bennett*, 322 F.3d at 586). "The ultimate burden of proving adequacy is on the state." *Id.* (citing *Bennett*, 322 F.3d at 585-86).

If the state meets this burden, federal review of the claim is foreclosed unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "To establish cause . . . the [petitioner] must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

The Court addresses each bar below and then separately addresses Petitioner's claim regarding a fundamental miscarriage of justice.

17CV552 JAH (BGS)

### 2. Analysis

#### a) Untimely

The Court of Appeal found Petitioner's August 26, 2016 petition, "filed more than three years after he pleaded guilty . . . barred as untimely." (Lodgment 5 at 2.) The court emphasized the delay from three different points: more than three years from when he was detained by DHS; more than two years from the date the Superior Court denied relief; and six months from the date the immigration court denied his application to cancel removal. (*Id.*)

The Court cannot find the Court of Appeal's ruling is "interwoven with federal law or dependent upon a federal constitutional ruling" and Petitioner has not argued otherwise. *Cooper*, 510 F.3d at 924. The court simply found the petition was untimely and Petitioner's delay in seeking relief showed a lack of diligence. It is an independent bar. Respondent has also carried his burden as to the adequacy of the bar. Respondent has asserted untimeliness as an independent and adequate state procedural ground barring Petitioner's claim. Petitioner has not asserted specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. *Carter*, 385 F.3d at 1198. And, California' timeliness rule is generally considered adequate because, despite the discretion it affords, it is firmly established and regularly followed. *Walker v. Martin*, 562 US. 307, 317-321 (2011). Respondent has met its burden in establishing California's timeliness rule is an adequate and independent basis for denying relief.

When the state meets its burden, as it has here, the Court cannot review the claim unless Petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. It does not appear that Petitioner is attempting to argue the untimeliness procedural default should be excused based on cause and prejudice. However, in addressing the three procedural bars, Petitioner states, "the California Court of Appeal found Mr. Celaya's claims barred by three separate independent procedural rules. The first and second have been addressed

above." (Opp'n at 5.) It is not clear how Petitioner addressed the untimeliness procedural bar, or cause for the default in particular, previously in his Opposition, however, Petitioner may be arguing the cause for his default was the lack of a factual basis for his claim until he received the February 17, 2016 Order. *See Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004) ("Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis"). This argument, to the extent it is being made, is not persuasive. As discussed above, Petitioner knew the "facts suggesting both unreasonable performance and resulting prejudice" — "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" or demanded a better deal —no later than October 2013.[16] *Hasan*, 254 F.3d at 1154; *Lee v. U.S.*, 137 S. Ct. at 1965 (quoting *Hill*, 474 U.S at 59); *Rodriguez-Vega*, 797 F.3d at 788.

Petitioner also argues that the "denials by the California Court of Appeal as untimely were in error, especially given the [c]ourt failed to consider the Superior Court's finding that Mr. Celaya's initial petition failed to show prejudice because 'he is facing deportation not on the basis of any criminal convictions, but because of his status as an alien present without admission.'" (Opp'n at 5.) It is not clear how this would be an external cause for his delay given he could have taken this issue to the Court of Appeal. But, to the extent Petitioner is arguing this was cause for his delay, the Court disagrees. As discussed above, (*see infra* III.A.2.d)(2)), the Superior Court relied on the absence of evidence that his deportation was related to his conviction, as opposed to his illegal status, not the absence of a final order of removal. Petitioner has not shown cause for his default.

///

///

---

[16] (*See infra* III.A.2.d).)

### b)     Failed to Move to Withdraw Plea in the Trial Court

The Court of Appeal also found the petition barred because Petitioner could have moved to withdraw his guilty plea under California Penal Code § 1018 within six months of when he was granted probation, but did not do so.  (Lodgment 5 at 2.)  The court explained that "just as a defendant generally may not raise on appeal a claim not raised at trial, defendant should not be allowed to raise on habeas corpus an issue that could have been presented at trial."  (*Id.* at 2.)  Respondent has asserted this as an independent and adequate procedural ground.

The Court is convinced this is an independent bar, but Respondent has not carried their burden in establishing the adequacy of the bar. Respondent cites *Xiong v. Felker*, 681 F.3d 1067, 1075 (9th Cir. 2012) in the Motion to argue "Petitioner's forfeiture under California law constitutes a procedural default."  (Mot. at 8.)  In *Xiong v. Felker*, the court found a petitioner that failed to object to the trial court's post-trial investigation of a juror misconduct claim at trial, forfeited the claim and it was procedurally defaulted.  *Id.* Although Petitioner has not come forward with specific factual allegations that demonstrate the inadequacy of the state procedure, "the ultimate burden of proving adequacy is on the state."  *Carter*, 385 F.3d at 1198.  And, the Court cannot say at this point, based on the minimal briefing and information provided by Respondent that the state has established failure to withdraw a guilty plea within six months under § 1018 is an adequate bar.[17]

///

///

///

---

[17] The Court notes that this is not to say that such a bar might is not adequate, rather, because Respondent has cited only the one case on this issue and it does not in itself establish the adequacy of the bar, the Court cannot find Respondent has carried their burden in this instance.  *Carter*, 385 F.3d at 1198 ("The ultimate burden of proving adequacy is on the state.")

### c) Failed to Obtain Certificate of Probable Cause

Finally, the court of appeal found petitioner's claim was also barred because he could have obtained a certificate of probable cause from the sentencing court under § 1237.5 and filing a notice of appeal." (*Id.* at 2.) California Penal Code § 1237.5 is "an independent and adequate state procedural ground." *Strong v. Sullivan*, 265 Fed. Appx. 489, 490 (9th Cir. 2008) (citing *People v. Mendez*, 19 Cal. 4th 1084 (1999)).

Petitioner argues in opposition that the legislative intent behind § 1237.5 was to promote judicial economy by screening out wholly frivolous guilty plea appeals. (Opp'n at 6 (citing *Mendez*, 19 Cal. 4th at 1094).) It is not clear how this argument addresses either the adequacy of the bar or cause and prejudice for failing to comply with it. The Court could speculate that Petitioner is suggesting the bar is not regularly followed for non-frivolous claims, however, the case the Ninth Circuit relies on to recognize it as an independent and adequate state procedural ground, the same case Petitioner himself cites, indicates it is to "be applied in a strict manner" and is a "legislative command to defendants." *Mendez*, 19 Cal. 4th at 1098. To the extent Petitioner is arguing it should not have applied to him because he is not asserting a frivolous claim, *Mendez* makes clear § 1237.5 must be complied with "fully, and specifically, in a timely fashion." *Id.* at 1099. Whether it is or is not frivolous is not a factor despite the acknowledged legislative intent Petitioner relies on. Petitioner does no set forth any particular basis addressing cause and prejudice and the Court has already addressed his general arguments as to his reasons for delay above.

### d) Fundamental Miscarriage of Justice

"[A] petitioner overcomes procedural default if he presents sufficient evidence to 'demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (quoting *Coleman*, 501 U.S. at 750). "To make this showing, a petitioner's case must fall within the 'narrow class of cases . . . involving extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Id.* (quoting

*McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). To pass through this "actual innocence procedural gateway," a petitioner "must show that, in light of all available evidence, it is more likely than not that no reasonable juror would convict him of the relevant crime."[18] *Id.* (citation omitted.) "This rule, or fundamental miscarriage of justice exception is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *McQuiggin*, 569 U.S. at 392.[19]

To show actual innocence, the petitioner must "persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995) [noting the miscarriage of justice exception only applies to cases in which new evidence shows "it is more likely than not that no reasonable juror would have convicted the petitioner"]). Critically, "actual innocence," for purposes of *Schlup*, "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The habeas court considers all evidence, both old and new, incriminating and exculpatory, admissible at trial or not, and based, "[o]n this complete record, the court makes a probabilistic determination about what reasonable, properly instructed jurors would do." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (internal quotations omitted).

---

[18] Petitioner raises fundamental miscarriage of justice in addressing the applicable procedural bars, however, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuggin v. Perkins*, 569 U.S. 383, 386 (2013).
[19] In the section of his Opposition addressing the fundamental miscarriage of justice argument, Petitioner cites a recent Supreme Court decision that addresses a § 2255 habeas petitioner that discovered after pleading guilty that he had pled to an aggravated felony. *Lee v. U.S.*, 137 S. Ct. 1958 (2017). Although the case provides guidance on proving prejudice when there is no dispute that plea-stage counsel provided inadequate representation, the case does not address a fundamental miscarriage of justice to overcome state procedural default or the statute of limitations at issue here.

Petitioner does not identify any new evidence. He claims the witness that observed Petitioner driving drunk and contacted police could not be located based on his investigation, (Pet. ¶ 19, Ex. L), but that does not overcome the significant evidence of his guilt. Putting aside his admission to police that he felt drunk and should not have been driving, he was found behind the wheel of the vehicle with it still in gear, he was passed out, his child in the back seat, he failed numerous sobriety tests, and every test he was given to assess his blood alcohol level was over the legal limit. Even accepting Petitioner's assertion that the witness is unavailable to testify as to the volitional movement of the car, the Court is not persuaded that "no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386. Petitioner has not shown that the "failure to consider the claims will result in a fundamental miscarriage of justice." *Smith*, 510 F.3d at 1139.

## CONCLUSION & RECOMMENDATION

The Court finds the Petitioner should be dismissed because even with the benefit of a later start date and statutory tolling, it was filed beyond AEDPA's one-year statute of limitations Additionally, the Petition should be dismissed because is it subject to the to state procedural bars discussed above

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) granting Respondent's Motion to Dismiss the Petition.

**IT IS ORDERED** that no later than **March 15, 2018,** any party to his action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **March 22, 2018**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v.*

17CV552 JAH (BGS)

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated:  February 28, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge